**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
────────────────────────────────────

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

                  v.         **09-CR-376A(Sr)**

**RONALD EVANS**

      **Defendant.**

────────────────────────────────────


## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #9.


## PRELIMINARY STATEMENT

The defendant, Ronald Evans, ("the defendant") is charged with co-defendant, Tashine Knightner, in a seven-count Indictment with having violated Title 18, United States Code, Sections 2, 371, 471, 472, 922(g)(1) and 924(e)[1].  Dkt. #7. Presently pending before this Court is the defendant's motion to suppress statements made by him and his motion to sever Counts 1 through 5 from Counts 6 and 7.  Dkt.

───────────────

[1] Counts 1-5 of the Indictment charge both defendants with manufacturing counterfeit currency (Count 1), uttering counterfeit currency (Counts 2-4) and conspiracy to make and utter counterfeit currency (Count 5).  Defendant Ronald Evans is charged in Count 6 with the unlawful possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1) and 924(e).  In addition, Count 7 seeks the forfeiture of the firearm pursuant to Title 18, United States Code, Sections 924(d) and 3665 and Title 28, United States Code, Section 2461(c).

#10.  The government filed opposition to the defendant's motion to suppress and

motion to sever.  Dkt. #11.  An evidentiary hearing was held on defendant's motion to

suppress on February 23, 2010 and oral argument on the defendant's motion to sever

was held at the conclusion of the evidentiary hearing.  The Court ordered the parties to

file post-hearing memoranda no later than March 26, 2010.  A transcript of the

evidentiary hearing, consisting of one volume, was filed on March 8, 2010.  Dkt. #12.

Thereafter, the time for filing post-hearing memoranda was extended to April 9, 2010.

Post-hearing memoranda were filed on April 9, 2010 (Dkt. ##15 and 16).  What follows

is this Court's Report, Recommendation and Order with respect to defendant's motion

to suppress.  This Court's Decision and Order with respect to defendant's motion to

sever will be addressed and filed separately.  For the following reasons, it is

recommended that defendant's motion to suppress statements be denied.


**FACTS**[2]

        In or about August 2009, at the request of the New York State Police, the

United States Secret Service became involved in an investigation involving the use of

counterfeit currency at a Wal-Mart in Clarence, New York.  (T, pp.4-5.)  Specifically,

there were at least three separate incidents on three separate days involving the same

individuals.  (T, pp.4-5.)  During one of the incidents, an EBT card was used and

through investigative measures, the EBT card was traced to co-defendant Tashine

---

[2] The facts are taken from the transcript of the evidentiary hearing conducted by
this Court on February 23, 2010.  References to testimony are designated by "T"
followed by the appropriate page number(s).

Knightner, 55 Dorris Avenue, Buffalo, New York.  (T, pp. 5 and 60.)  Further investigative measures, including surveillance and a "trash pull," confirmed that co-defendant Tashine Knightner resided at 55 Dorris Avenue.  (T, p.5.)  Thereafter, a search warrant for 55 Dorris Avenue was obtained and executed on September 1, 2009.  (T, p.5.)

Law enforcement agents arrived at 55 Dorris Avenue at approximately 6:45 a.m. on September 1, 2009 and knocked on the front door several times.  (T, p.6.)  In response, two individuals came to the door, co-defendants Tashine Knightner and Ronald Evans.  (T, p.6.)  Both Tashine Knightner and Ronald Evans were held at the entrance to 55 Dorris Avenue while law enforcement entered and cleared the house making sure there were no other occupants in the house.  (T, p.6.)  As the search team entered the house, New York State Police Investigator Daniel E. Strozyk handcuffed the defendant behind his back and the two waited on the porch of the residence until the search team cleared the house.  (T, p.58.)  During the evidentiary hearing, in response to the question as to why he handcuffed the defendant, Investigator Strozyk responded, "[i]t's for our safety until we find out who everybody is in that house."  (T, pp.58-59.)  As Investigator Strozyk was placing the handcuffs on the defendant, he testified that he asked the defendant if he had any weapons on him.  (T, p.61.)  In response to this question, the defendant replied that there was a handgun in the night stand in the bedroom.  (T, pp.61-62.)  Investigator Strozyk further inquired of the defendant whether there were any other weapons and the defendant stated that there may be a knife in the bedroom that he stays in with his friend.  (T, pp.62-63.)  Thereafter, Investigator Strozyk

asked the defendant if the "friend" to whom he referred was co-defendant Tashine Knightner, to which the defendant responded, "yes." (T, p.64.) Investigator Strozyk testified that in order to ensure officer safety, he passed along the information about the possible weapons to the search team inside. (T, p.76.)

After approximately eight to ten minutes and once the residence was secured, the defendant was escorted by Investigator Strozyk into the living room and the defendant was seated on a couch. (T, pp.61 and 65.) United States Secret Service Special Agent Michael Fields took some background information from defendant Evans and also read *Miranda* warnings to him by using a pre-printed card that Special Agent Fields carries in his wallet. (T, p.10.) Special Agent Fields testified that at the time he read the *Miranda* warnings to the defendant, he did not have a *Miranda* waiver form. (T, p.14.) After Special Agent Fields read the *Miranda* warnings word for word from the card in his wallet to the defendant, the defendant indicated that he wished to speak to Special Agent Fields. (T, p.15.)

During this initial conversation with Special Agent Fields which was heard by Investigator Strozyk, the defendant denied manufacturing, possessing or passing any of the counterfeit currency. (T, p.15.) He did, however, admit that the firearm, a .45 caliber Taurus semi-automatic pistol, found in the residence belonged to his sister, Anna. (T, p.16.) Moreover, Special Agent Fields testified that the defendant advised him that his sister had obtained the firearm in North Carolina and that the paperwork for the gun was in his brother Lawrence's truck. (T, p.16.) In addition, Investigator Strozyk

testified that the defendant further stated that he was a convicted felon and further, that he knew it was illegal for him to possess a gun as a felon.  (T, pp.67-68.)

At the conclusion of his interview of the defendant, Special Agent Fields testified that he escorted him from the premises.  He then realized that he did not have a signed *Miranda* waiver form from the defendant.  (T, pp.17 and 21.)  As a result, he obtained a *Miranda* waiver form from another agent, re-read the *Miranda* warnings and waiver to the defendant and the defendant signed the form.  (T, p.17.)  After signing the Warning and Consent to Speak Warning of Rights Form (Gov't Exhibit 2[3]), the defendant was questioned further about his involvement with the counterfeit currency. (T, p.17.)  At that time, the defendant admitted to having been involved with the counterfeit currency on one occasion, but that he did not think the counterfeit currency "was very good so he didn't want to be involved with it, [and further he] told Miss Knightner not to be involved with it."  (T, p.17.)

## DISCUSSION AND ANALYSIS

**A.  Detention of the Defendant During the Safety Sweep of the Premises**

The Supreme Court of the United States has concluded that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981) (footnote omitted); *see Rivera v.*

---

[3]Exhibit references are to those exhibits received in evidence at the February 23, 2010 evidentiary hearing.

*United States*, 928 F.2d 592, 606 (2d Cir. 1991) (regardless of individualized suspicion, police officers have the authority to detain and conduct a limited search of the occupants of the premises while an authorized search is in progress); *see also Muehler v. Mena*, 544 U.S. 93 (2005).

It is not unreasonable for police officers to effect such a detention by gunpoint or use of handcuffs. *See United States v. Newton*, 181 F. Supp.2d 157, 172 (E.D.N.Y. 2002), *aff'd*, 369 F.3d 659 (2d Cir. 2004) ("holding the detainee at gunpoint or in handcuffs does not necessarily transform a detention during the execution of a search warrant into an unlawful seizure."); *Crosby v. Hare*, 932 F. Supp. 490 (W.D.N.Y. 1996) ("it was more than reasonable for the police to detain Crosby, first at gunpoint while the officers conducted an initial security sweep of the house, and then for a further period of time in handcuffs."); *Howard v. Schoberle*, 907 F. Supp. 671, 677 (S.D.N.Y. 1995) ("the decision to handcuff Plaintiffs after the police entered the apartment [to execute a search warrant] was undeniably lawful."). Here, there is no dispute that the defendant was detained during his entire encounter with law enforcement on September 1, 2009 while the search warrant for 55 Dorris Avenue was executed. Accordingly, Investigator Strozyk's decision to handcuff the defendant while the search team searched 55 Dorris Avenue did not violate the defendant's constitutional right under the Fourth Amendment to the United States Constitution.

**B.      Preliminary Interrogation of the Defendant by Investigator Strozyk**

> In *New York v. Quarles*, the Supreme Court identified a
> "narrow exception to the Miranda rule," when arresting
> officers ask a defendant "questions necessary to secure
> their own safety or the safety of the public."  467 U.S. at
> 658-59, 104 S.Ct. 2626.  Recently reiterating this principle in
> *United States v. Reyes*, this court observed that "Miranda
> warnings need not precede 'questions reasonably prompted
> by a concern for the public safety' or for the safety of the
> arresting officers" for a suspect's answers to be admitted as
> evidence of his guilt.  353 F.3d at 152 (quoting *New York v.
> Quarles*, 467 U.S. at 656, 104 S.Ct. 2626).  The public
> safety exception to Miranda does not depend upon the
> subjective motivation of the questioning officer.  *See
> Quarles*, 467 U.S. at 655-56, 104 S.Ct. 2626.  Rather, it
> applies so long as the questioning "relate[s] to an objectively
> reasonable need to protect the police or the public from any
> immediate danger."  *Id*. at 659, n. 8, 104 S.Ct. 2626; accord
> *United States v. Reyes*, 353 F.3d at 154.

*United States v. Newton*, 369 F.3d 659, 677-78 (2d Cir.), *cert. denied*, 543 U.S. 947

(2004).  In *United States v. Reyes*, 353 F.3d 148 (2d Cir. 2003), the Second Circuit

expressed the basis for the exception to the *Miranda* rule wherein it stated:

> We emphasize, as did the Supreme Court, that the purpose
> of the public safety exception is to allow officers "to follow
> their legitimate instincts when confronting situations
> presenting a danger to the public safety."  *Quarles*, 467 U.S.
> at 659, 104 S.Ct. 2626.  There has to be some flexibility in
> situations where the safety of the public and the officers are
> at risk.

*Id.* at 155; *see also United States v. Shea*, 150 F.3d 44, 48 (1st Cir.), *cert. denied*, 525

U.S. 1030 (1998); *United States v. Talley*, 275 F.3d 560, 563-65 (6th Cir. 2001).

In the instant case, Investigator Strozyk's initial question to defendant Evans while on the porch at the outset of the execution of the search warrant for 55 Dorris Avenue, *to wit*: whether he had any weapons on him, was to ensure the safety of all the law enforcement officers involved in the execution of the search warrant. Following the principles articulated by the United States Supreme Court in *Quarles,* the question posed by Investigator Strozyk to the defendant was a legitimate one made to provide for the safety of the officers. Therefore, the narrow exception to *Miranda* as articulated in *Quarles* and followed by the Court of Appeals for the Second Circuit in *Reyes* applies. Accordingly, the defendant's statements to Investigator Strozyk concerning a handgun in the night stand and the possibility of a knife as well, are not subject to suppression and the application of the Exclusionary Rule. As a result, it is recommended that the defendant's motion to suppress his statements to Investigator Strozyk while on the porch at 55 Dorris Avenue be denied.

**C.      Interrogation of the Defendant by Special Agent Fields**

In *Miranda v. Arizona*, the United States Supreme Court created a procedural mechanism with the purpose of establishing a prophylactic safeguard that would protect a defendant from the coercive nature of custodial interrogation and preserve his Fifth Amendment privilege against self-incrimination. However, before the requirements of *Miranda* come into play, there must be a form of "custody" of the person to be interrogated which "custody" amounts to the deprivation of "freedom of action in any significant way." *Miranda v.* Arizona, 384 U.S. 436, 444 (1966);

*Thompson v. Keohane*, 516 U.S. 99, 100-101 (1995); *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998); *United States v. Newton*, 369 F.3d 659 (2d Cir.), *cert. denied*, 543 U.S. 947 (2004). The defendant bears the burden of proving custody. *See United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984). In making a determination of whether such "custody" existed, the Court must consider the totality of the circumstances. *California v. Beheler*, 463 U.S. 1131, 1125 (1983)*; Tankleff v. Senkowski, supra*. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (Citation omitted). *California v. Beheler* at 1125; *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The United States Supreme Court has "explicitly recognized that Miranda warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect'." *California v. Beheler* at 1125; *Mathiason* at 495.

The Court of Appeals for the Second Circuit has ruled that:

> The test used in determining whether a defendant was in custody is an objective one that (a) asks whether a reasonable person would have understood herself to be subjected to restraints comparable to those associated with a formal arrest, and (b) focuses upon the presence or absence of affirmative indications that the defendant was not free to leave. An accused is in custody when, even in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they

> would not permit the accused to leave. *United States v. Kirsh*, 54 F.3d 1062, 1067 (2d Cir.) (internal quotation marks and citation omitted, *cert. denied*, 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995); *see also United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (a custodial setting is evidenced by "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak").

*Tankleff v. Senkowski,* 135 F.3d at 243-244.

As the Court of Appeals for the Second Circuit has further stated, the Supreme Court's decision in *Berkemer* "emphasizes that 'the only relevant inquiry [in determining when a person is in "custody" for purposes of Miranda] is how a reasonable man in the suspect's position would have understood his situation'." *Cruz v. Miller*, 255 F.3d 77, 83 (2d Cir. 2001).

The defendant seeks the suppression of two sets of statements he made to Special Agent Fields on the grounds that he was not given his *Miranda* warnings before he made such statements. The first set of statements in question, were made while the defendant was seated on the couch in the living room at 55 Dorris Avenue and the second set of statements were made after the defendant had been escorted outside 55 Dorris Avenue for purposes of being transported to the United States Secret Service office and thereafter, to the United States Courthouse. Defendant's argument to suppress these statements is belied by the sworn testimony of both Special Agent Fields and Investigator Strozyk. Indeed, the record before this Court establishes that the defendant was given *Miranda* warnings twice, before being interrogated by Special

Agent Fields. He also executed a Warning and Consent to Speak Warning of Rights Form thereby acknowledging receipt of said warnings and advice of rights.

There is no dispute that the defendant was in custody at the time both sets of statements were made by him. The defendant was handcuffed at the time both sets of statements were made and he was not free to leave. However, Special Agent Fields read *Miranda* warnings using a pre-printed card that he carries in his wallet to the defendant before interrogating him. (T, p.10.) Special Agent Fields testified that at the time he read defendant Evans his *Miranda* warnings, he did not have a *Miranda* waiver form. (T, p.14.) After reading the *Miranda* warnings word for word from the card in his wallet to the defendant, the defendant indicated that he wished to speak to Special Agent Fields. (T, p.15.)

During this initial conversation with Special Agent Fields, the defendant denied manufacturing, possessing or passing any of the counterfeit currency. (T, p.15.) However, he did admit that the firearm, a .45 caliber Taurus semi-automatic pistol, found in the residence belonged to his sister, Anna which she had obtained in North Carolina and that the paperwork for the gun was in his brother Lawrence's truck. (T, p.16.) In addition, Investigator Strozyk testified that defendant stated that he was a convicted felon and further, that he knew it was illegal for him to possess a gun as a felon. (T, pp.67-68.)

At the conclusion of his interview of the defendant, Special Agent Fields testified that he escorted him outside and then realized that he did not have a signed *Miranda* waiver form from the defendant.  (T, pp.17 and 21.)  He then obtained a *Miranda* waiver form from another agent, re-read the *Miranda* warnings and waiver to the defendant and the defendant signed the form.  (T, p.17.)  After signing the Warning and Consent to Speak Warning of Rights Form (Gov't Exhibit 2), the defendant was questioned further about his involvement with the counterfeit currency.  (T, p.17.)  At that time, he admitted to having been involved with the counterfeit currency on one occasion, but that he did not think the counterfeit currency "was very good so he didn't want to be involved with it, [and further he] told Miss Knightner not to be involved with it."  (T, p.17.)

The record before this Court conclusively establishes that the defendant was given *Miranda* warnings and advice of rights on two separate occasions prior to being interrogated by Special Agent Fields and making the statements at issue herein. The record before this Court is devoid of any evidence to contradict Special Agent Fields' and Investigator Strozyk's testimony or to establish that the statements made by the defendant were the result of illegal coercion.  Therefore, it is recommended that the defendant's motion to suppress those statements as evidence at trial be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to**

**comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to**

**consider the objection.**


DATED:      Buffalo, New York
            May 6, 2010


                                    *s/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**